*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No.  23-90146-E-7 |
| | ) Docket Control No.  UST-1 |
| MARCO VINICIO ALATORRE | ) |
| ZAMORA and MIREYA ALATORRE, | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

### MEMORANDUM OPINION AND DECISION

The United States Trustee, Tracy Hope Davis ("U.S. Trustee"), seeks dismissal of this voluntary Chapter 7 Case filed by Marco Vinicio Alatorre Zamora and Mireya Alatorre, the Debtors. The statutory basis under which dismissal is requested is 11 U.S.C. § 707(b)(1) and (b)(3)(B), based on the following grounds stated with particularity (Fed. R. Bank. P. 9013), as summarized by the court (except when the text is set in "quotation marks") and  identified by paragraph number used in the Motion:

    1.    "The Debtors' case should be dismissed under 11 U.S.C. §§ 707(b)(1) and 707(b)(3) because their disposable income is sufficient to pay a meaningful portion of their debts."

           Further, that Debtors' monthly income and expenses as stated on Schedules I and J are sufficient to pay all unsecured claims in full in less than 20 months.

    2.    The Motion is stated to be based on:

a.      The Points and Authorities,

b.      Exhibits, and

c.      Everything else filed in this Bankruptcy Case.

The Declaration filed with the Motion states many "grounds" with particularity. Dckt. 24. Such grounds upon which the requested relief is based are to be stated with particularity in the motion (Fed. R. Bankr. P. 9013). The same is true for the Points and Authorities, which states with particularity grounds and facts, which are to be stated with particularity in the Motion. Dckt. 25.

**Debtors' Opposition**

Debtors Marco Vinicio Alatorre Zamora and Mireya Alatorre filed an Opposition on August 24, 2023. Dckt. 27. Debtors state:

1.      U.S. Trustee has failed to file and provide notice of their Statement of Presumed Abuse, which is required prior to filing a motion to dismiss under 11 U.S.C. § 704(b)(2).

2.      Debtors' monthly income throughout the year is less than the period U.S. Trustee reviewed, due to Debtors' layoff period.

3.      U.S. Trustee has not provided facts to support Debtors acted in bad faith.

**U.S. Trustee Reply to Debtors' Opposition**

The U.S. Trustee filed a Reply to Debtors' Opposition on August 31, 2023. Dckt. 27. In her response, the U.S. Trustee states:

1.      Despite Debtors suggesting to the contrary, a debtor's ability to repay a meaningful portion of their debts justifies dismissal under 11 U.S.C. § 707(b)(3).

2.      Debtors have disposable income to pay creditors and have demonstrated a likelihood of sufficient future income to repay their creditors.

Dckt. 30.

**U.S. Trustee Second Reply**

On October 12, 2023, the U.S. Trustee filed a Response in the wake of the September 7, 2023 hearing, updating the court on what has since transpired in the Bankruptcy Case. Response; Dckt. 35. U.S. Trustee filed the Declaration of Laurie Brugger in support of this Response. Declaration; Dckt. 36. In her Response, the U.S. Trustee states:

1.      Debtors appear to have $2,370.87 in monthly net income available for payments to creditors, according to their amended Schedule I and subtracting Schedule J expenses. Therefore, Debtors should have its case dismissed under 11 U.S.C. § 707(b)(3) because it has sufficient income to make payments.

2.      In defiance of this court's September 12, 2023 Order, Debtors have not provided adequate support or documentation for Amended Schedule I. Even still, taking the Amended Schedule I as accurate, Debtors still have $2,370.87 available to make monthly payments.

Dckt. 35.

**Amended Schedule I**

On October 10, 2023, Debtors filed an Amended Schedule I. Dckt. 34. On it, Debtors list having gross monthly income of $9,692.00 a month. After withholdings and deductions, Debtors' Combined Monthly Income (line 12) stated on Amended Schedule I is $7,647.00. *Id.* at 2. This is ($885) less than the $8,532.53 stated on Original Schedule I. Dckt. 1 at 28.

**Supplemental Pleadings Ordered to be Filed**

As stated on the Record at the October 19, 2023 Hearing, the court ordered supplemental briefing by the Parties on the following points:

(1)     The applicable law, post-BAPCPA on what is considered and constitutes the "totality of the circumstances" for dismissal of a bankruptcy case as provided in 11 U.S.C. § 707(b)(1) and (b)(3) as "an abuse of the provisions of [Chapter 7 of the Bankruptcy Code]";

(2)     The proper weight given to the debtor's income and ability to fund a Chapter 13 plan in determine whether abuse exists under 11 U.S.C. § 707(b)(1) and (b)(3), and the consideration of such in context of any presumption of abuse under 11 U.S.C. § 707(b).

**Debtors Not Filing a Supplemental Brief**

Debtors did not file a supplemental brief addressing the issues identified by the court.

**U.S. Trustee Supplemental Brief**

The U.S. Trustee filed a Supplemental Brief addressing these points. Sup. Brief; Dckt. 42. The further arguments of the U.S. Trustee are summarized as follows:

A.      BAPCAP did away with a debtor's "right" to a Chapter 7 discharge, and imposes a bankruptcy scheme in which reasonable payments, if possible, will be made to creditors by debtors who have projected disposable income.

///

3

B.      Under the totality of the circumstances test for abuse, a debtor's ability to make a meaningful payment to creditors is the primary factor to be considered. The U.S. Trustee directs the court to consider the analysis of this issue by the Ninth Circuit in *In re Price*, 353 F.3d 1135, 1139-40 (9th Cir. 2003), predating the 2005 amendments, and by the Bankruptcy Appellate Panel in *In re Ng*, 477 B.R. 118, 125-26 (B.A.P. 9th Cir. 2012).

C.      Dismissal of a case for abuse under 11 U.S.C. § 707(b)(2) and § 707(b)(3) are two separate grounds for dismissal.

## DISCUSSION

The court addresses the grounds upon which the Motion to Dismiss is based and the oppositions thereto.

**U.S. Trustee's Failure to**
**File Statement Regarding Presumption**
**of Abuse, § 704(b)(2)(A) Notice Requirement**

Pursuant to 11 U.S.C. § 704(b)(1)(A), a United States Trustee is required to file a statement within ten (10) days of the first meeting of creditors that advises the court whether a debtor's case would be presumed abuse under § 707(b) and then provide such statement to all creditors.

(b)

(1) With respect to a debtor who is an individual in a case under this chapter —

(A) the United States trustee (or the bankruptcy administrator, if any) shall review all materials filed by the debtor and, not later than 10 days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b); and

(B) not later than 7 days after receiving a statement under subparagraph (A), the court shall provide a copy of the statement to all creditors.

11 U.S.C. § 704(b)(1)(A). This statement must be filed by such United States Trustee in the bankruptcy case if the presumption of abuse is to be asserted as a basis to dismiss the Chapter 7 case. 6 Collier on Bankruptcy P 704.16 (16th 2023).

Reading the plain language of the Bankruptcy Code, both the statement to be filed with the court and the motion to dismiss referred to in § 704(b)(2)(A) relate to the United States trustee's right to bring a motion to dismiss where the presumption of abuse exists, not in cases brought to dismiss under the totality of circumstances. *See also Fokkena v. Draisey* (*In re Draisey*), 395 B.R. 79, 82 (B.A.P. 8th Cir. 2008). Therefore, if a United States Trustee fails to file the statement on

4

time, such United States Trustee may not seek to dismiss the case based on a presumption of abuse under § 707(b)(2). However, a United States Trustee may still seek dismissal of a Chapter 7 case under other provisions of 11 U.S.C. § 707, including §§ 707(b)(1) and (3). 6 Collier on Bankruptcy P 704.16 (16th 2023); *See also*, *Fokkena v. Draisey* (*In re Draisey*), 395 B.R. at 82 ("Filing the § 704(b)(1) statement is a condition precedent to filing a motion to dismiss under § 707(b)(2), not to filing a motion to dismiss under § 707(b)(3)(B).").

Here, the U.S. Trustee seeks to dismiss the case pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(3)(B), which are not based on a presumption of abuse for which a statement is required pursuant to 11 U.S.C. § 704(b)(2). Although the U.S. Trustee would be required to file a statement regarding the presumption of abuse if such relief was sought, the court finds that the failure to file such a statement does not preclude the U.S. Trustee from bringing the present Motion seeking dismissal on grounds other than a presumption of abuse.

**Grounds to Dismiss Pursuant to**
**11 U.S.C. §§ 707(b)(1) and (3)**

Pursuant to 11 U.S.C. § 707(b)(1), after notice and hearing, the court may dismiss or convert a Chapter 7 case if it finds that granting of relief would be an abuse of the provisions of Chapter 7.

> § 707. Dismissal of a case or conversion to a case under chapter 11 or 13
>
> (b)
>
> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

11 U.S.C. § 707(b)(1). In seeking such relief pursuant to 11 U.S.C. § 707(b)(1) there is no presumption of abuse existing against Debtor. Section 707(b)(3), however, governs relief sought pursuant to 11 U.S.C. § 707(b)(1), when there is no presumption of abuse, and gives the court

5

1    discretion to determine whether the petition was filed in bad faith or, under the totality of the

2    circumstances, whether a debtor's financial situation and conduct demonstrate abuse.

3    　　　§ 707. Dismissal of a case or conversion to a case under chapter 11 or 13

4    　　　(b)

5    　　　(3) In considering under paragraph (1) whether the granting of relief would be an
     abuse of the provisions of this chapter [Chapter 7] in a case in which the presumption
6    in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider —

7    　　　　　(A) whether the debtor filed the petition in bad faith; or

8    　　　　　(B) the totality of the circumstances (including whether the debtor seeks to
     reject a personal services contract and the financial need for such rejection
9    as sought by the debtor) of the debtor's financial situation demonstrates
     abuse.

10   11 U.S.C. § 707(b)(3).

11

12   　　　The U.S. Trustee argues grounds exist under § 707(b)(3) to dismiss the case based on the

13   totality of the circumstances.  In the U.S. Trustee's Memorandum of Points and Authorities,

14   Dckt. 25, the U.S. Trustee states that Debtors' disposable income is $3,256.24, which would pay off

15   Debtors' scheduled unsecured debt of $63,351.00 in twenty (20) months.[1]    Additionally, U.S.

16   Trustee states that Debtors have demonstrated an ability to pay as debtor Marco Vinicio Alatorre

17   Zamora testified that they are working full time again with their employer of almost twenty (20)

18   years, with regular overtime.

19   　　　Debtors, however, argue that their monthly income fluctuates throughout the year.

20   Opposition, Dckt. 27.  Debtors argue that their monthly income for 2022 was $6,568.00, their

21   monthly income for 2021 was $7,091.74, and their monthly income for 2020 was $6,797.45.

22   Debtors, curiously, admit that if they use their disposable income from 2022, it would take them fifty

23   (50) months to pay off their unsecured claims.

24   　　　Debtors' Declaration in support of their Opposition states, under penalty of perjury, that their

25   income for this year will be similar to that of 2022, or less.  Declaration of debtor Mario Vinicio

26   Alatorre Zamora; Dckt. 28 ¶ 7.  Debtors do not indicate why their income for this year will be less

27   _____

28   　　　[1] On Schedule E/F, Debtors state under penalty of perjury that they have ($63,351) in
     general unsecured debt and no priority unsecured claims.  Schedule E/F; Dckt. 1 at 18 - 24.

than in 2022.

Debtors state they anticipate their disposable income will be only about $1,542.00. Declaration, Dckt. 28. This is inconsistent with Debtors' Original Schedule I (stating under penalty of perjury Debtors' Combined Monthly Income) and Schedule J (stating Debtors' Monthly Expenses). Dckt. 1 at p. 27-31. This is also inconsistent with the projected disposable income based on Amended Schedule I, Dckt. 34, in which Debtors state under penalty of perjury a lower Combined Monthly Income (after all deductions) of "only" $7,647.19. No Amended Schedule J has been filed.

Debtors state under penalty of perjury on Original Schedule I that their Combined Monthly Income (after all deductions) is $8,532.53 and on Schedule J that their monthly expenses, including the secured claim car payment, are ($5,276). Dckt 1 at 27-31. This provides Debtors' with monthly net income of $3,256.24 available to fund a Plan or pay creditors. Debtors state, under penalty of perjury on Original Schedule I and Schedule J, that they do not expect an increase or decrease of their monthly income or monthly expenses within the year after filing those Schedules. *Id.*; p. 31, Line 24. Contrary to these statements under penalty of perjury, Debtors's counsel argues in their Opposition that Debtors do anticipate a decrease in income, due to an anticipated slowdown in debtor Marco Vinicio Alatorre Zamora's work.

As stated above, on October 10, 2023, Debtors filed their Amended Schedule I. Dckt. 34. Using the lower Combined Monthly Income (after all deductions) of $7,647.00 shown on Amended Schedule I, and deducting the monthly Expenses of ($5,276) stated on Schedule J (Dckt. 1), Debtors' Monthly Net Income after all Deductions (Amended Schedule I) and Expenses (Schedule J) is $2,371.00. As computed below, the $2,371.00 in projected monthly income is still adequate to fund a Plan to provide for a 100% dividend for creditors holding general unsecured claims which are listed as being ($63,351). Schedule E/F, Dckt. 1. Debtors also state under penalty of perjury on Schedule E/F that they have no priority unsecured debt. *Id.*

In computing the treatment of creditor claims in a Chapter 13 Case, Chapter 13 Trustee fees and administrative expenses for a Chapter 13 case are approximately 7.2% (such fees subject to adjustment by the U.S. Trustee). Additionally, as provided in Local Bankruptcy Rule 2016-1(c)(1),

the flat fees for Chapter 13 debtors counsel (for which no further court approval is required) are $8,500.00 (or whatever lesser amount a debtor's counsel would agree). If Debtors were to fund a Chapter 13 Plan, based on a 100% unsecured claim dividend plan and if Debtors' counsel would seek the full $8,500.00 in fees for such a simple plan, the following amounts would need to be funded:

      A.     Chapter 13 Trustee Fees and Expenses, 7.2%..................($5,580)

      B.     Chapter 13 Debtors' Counsel's Fees and Costs...............($8,500)

      C.     General Unsecured Claims..............................................($63,351),

which would require a Chapter 13 Plan to be funded with $77,500.00. Over the term of a sixty-month plan, that would require monthly plan payments of $1,291.66. If Debtors were to fund it with their projected disposable income of $2,371.00 a month, the 100% dividend plan would be completed in just thirty-three (33) months.

Thus, even with the lower take home income amount of $7,647.00 stated on Amended Schedule I under penalty of perjury by Debtors (Dckt. 34) shows that there is sufficient projected disposable income to fund a 100% unsecured claim dividend Plan and creditors paid in full in just thirty-three months.

Prior Chapter 7 Filing and Discharge

The court notes that Debtors, represented by the same counsel as in the present case, filed a Chapter 7 Bankruptcy Case on July 30, 2014. Case 14-91090. Each of the two Debtors were granted their Chapter 7 discharges in Case 14-91090 on November 10, 2014.

The current Bankruptcy Case was filed on July 31, 2023, nine years after the filing of the 2014 case. 11 U.S.C. § 727(a)(8) bars the granting of a discharge in a Chapter 7 case if a Chapter 7 discharge was granted for a debtor in a prior case filed within eight years of the then current case.

Information on Schedules

Looking at Debtors' Schedule A/B, no real property interests are listed by Debtors. Amended Schedule A/B; Dckt. 17 at 1. On Amended Schedule A/B, Debtors' personal property assets total $32,767.00. *Id*. at 1-7.

Reviewing Schedule J Expenses, Debtors (as opposed to many other debtors who

unrealistically lower expenses to create the appearance of having projected disposable income) appear to be more realistic (erring on the higher side) on expenses, including monthly expenses of: ($1,800) for food and housekeeping supplies, ($600) for transportation (fuel, repairs, and maintenance), ($150) for entertainment, ($210) for clothing and laundry, ($367) for one car payment, and ($397) for phone, internet, and cable.  Dckt. 1, p. 30-31.

Looking at Schedule D, Debtors list one creditor, Toyota Financial Services, whose ($15,640) claim is secured by Debtors' 2020 Toyota Camry.  Dckt. 1 at 17.  The monthly payment for this claim is provided in Schedule J.

Debtors Can Fund a 90% Unsecured Dividend Plan
Even If Their Monthly Net Income is Cut in Half

If serious income reductions hit Debtors and they had only 50% of Monthly Net Income, the Monthly Net Income as computed using Debtors' Amended Schedule I, then Debtors would still be able to fund a Plan with $1,185.00 a month.  Over the term of a 60-month plan, monthly plan payments would generate $71,100.00 for administrative expenses and payment to creditors.  After deducting ($5,119) for Chapter 13 Trustee fees (estimated at 7.2%) and administrative expenses and ($8,500) for Debtors' counsel's maximum set fee for which no fee application is required (assuming Debtors' counsel concluded that such maximum fee was appropriate in such a bankruptcy), there is $57,481.00 remaining to pay creditors who are owed ($63,315) in general unsecured claims.  That would be a 90.73% general unsecured claim dividend - an almost unheard of large percentage in Chapter 13 cases.

As noted above, with Debtors' actual projected disposable income of $2,371.00 a month, Debtors would be done with the Chapter 13 case and paying a 100% dividend to creditors with unsecured claims in less than three years.

Debtors Have Primarily Consumer Debts

Looking at Schedule F, the unsecured debt appears to be substantially consumer credit card debt (as opposed to medical expenses, failed business expenses, and the like).  Debtors do list some student loan debt, but those amounts total approximately $1,360.00 and date back to 2002 and 2004.

Looking at the pattern of conduct, it appears that Debtors may be establishing an eight-year

9

Chapter 7 filing cycle, using the period between cases when obtaining a Chapter 7 discharge is barred to run up consumer debts and maintain a credit-funded lifestyle, which credit Debtors do not intend to repay.

Debtors' Income is Almost That of The
Median Income for a Family of Four in California

As the Debtors note, the median income for a family of four, as reported by the U.S. Trustee on its website, in California was $122,707.00 when this case was filed.  On Amended Schedule I, Debtors' combined monthly gross income is $9,692.00, which is $116,304.00 annually.  While not quite $122,707.00, it is knocking on the door.  Thus, while Debtors could possibly justify a three-year Chapter 13 Plan (*see*, 11 U.S.C. § 1325(b)(4) computation of applicable commitment period), that does not mean that $116,000.00 a year in income is irrelevant to a consideration of abuse.

The court notes that on the Debtors' Chapter 7 Statement of Current Monthly Income (which is an average computed from the six months preceding the filing of the bankruptcy case), Dckt. 1 at 42-44, Debtors compute their currently monthly income for the year as $121,508.00, even higher than that as based on Amended Schedule I.  Debtors' computation is 99.02% of the median income for a family of four.

Congress Has Crafted Chapter 13 Relief
For Debtors With Income Such as The
Debtors in This Case

If determined to be abusing the extraordinary relief granted under Chapter 7, Debtors are not left without possible bankruptcy relief.  Debtors can prosecute a Chapter 13 Plan.  From their income, Debtors can spend whatever is reasonable and necessary for their family expenses.  Then, only from what is left over after all expenses are provided for, will a Chapter 13 Plan be funded. If able to limit the Chapter 13 Plan to only three years based on Debtors' income, it appears that Debtors would still be able to fund a 100% Chapter 13 Plan (assuming that Debtors' expense information, which appears to be realistically higher, is accurate).

Debtors' argument (Opposition, p. 7:9-10; Dckt. 27) that if their disposable income was only $1,291.00 as projected by the U.S. Trustee, it would take them the *extraordinary* period of fifty (50) months to pay a 100% dividend to creditors with general unsecured claims, if Debtors did not

10

1   qualify to have only a thirty-six (36) month Chapter 13 Plan.  That fifty (50) months for a Chapter

2   13 Plan is not only less than the maximum period of a Chapter 13 Plan, but shows an extraordinary

3   financial ability for a debtor.  Rather than showing no abuse, that argument demonstrates how the

4   use of Chapter 7 by these Debtors is an abuse of Chapter 7 of the Bankruptcy Code.

5                       **DECISION**

6         The court begins with the plain language of the statute as enacted by Congress in 11 U.S.C.

7   § 707(b)(1) and (b)(3)(B).  Those provisions (stated above) provide that the totality of the

8   circumstances are considered when a presumption of abuse is not asserted.  The fact that Debtors'

9   income is just one or two percentage points below creating such a presumption does not make that

10   substantial income irrelevant.  Additionally, it does not require the court to conclude that the Debtors

11   filed the petition in bad faith.  As the express language of 11 U.S.C. § 707(b)(3) requires, the court

12   considers the "totality of the circumstances . . . of the debtor's financial situation" in determining

13   whether the Chapter 7 filing would be an abuse of the provisions of Chapter 7.

14         The Ninth Circuit Court of Appeals has addressed this totality of the circumstances for

15   dismissal of a Chapter 7 case in *Price v. United States Trustee (In re Price)*, 353 F.3d 1135 (9th Cir.

16   2003.  This was prior to the 2005 amendment to 11 U.S.C. § 707, when there was no presumption

17   of abuse and the conversion standard provided in then 11 U.S.C. § 707(b) that the United States

18   Trustee must show that there was a "substantial abuse" of Chapter 7 by the debtor and for which

19   there formerly was a statutory presumption of granting a debtor relief under Chapter 7.  The

20   provisions of 11 U.S.C. § 707, as amended have removed the requirement of "substantial abuse,"

21   with 11 U.S.C. § 707(b)(1) and (b)(3) requiring just "abuse."  Additionally, the presumption in favor

22   of granting a debtor relief under Chapter 7 has been deleted.  These deletions were made as part of

23   the 2005 BAPCPA amendments to the Bankruptcy Code.

24         In addressing the totality of the circumstances requirement for dismissal of a Chapter 7 case

25   filed by a debtor under the higher "substantial abuse" standard and there was a presumption of

26   granting Chapter 7 relief to a debtor, the Ninth Circuit Court of Appeals in *Price* stated a

27   nonexclusive lists of examples and factors to be considered by the court:

28                The remaining substantive issue is whether Price meets the substantial abuse

standard of Section 707(b). The term "substantial abuse" is not defined in the Bankruptcy Code. Rather, courts have examined the totality of the circumstances in determining whether substantial abuse exists in a particular case, utilizing criteria such as the following:

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

(4) Whether the debtor's proposed family budget is excessive or extravagant;

(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

3 Norton Bankruptcy Law and Practice 2d § 67:5, at 67-10 (William L. Norton, Jr. et al. eds., 1997).

The primary factor defining substantial abuse is the debtor's ability to pay his debts as determined by the ability to fund a Chapter 13 plan. Thus, we have concluded that a "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal." *Kelly*, 841 F.2d at 914.

*Price v. United States Trustee (In re Price)*, 353 F.3d at 1139-1140.

Here, Debtors have demonstrated that they have substantial monthly income and produce, after generous expenses, substantial monthly projected disposable income with which a Chapter 13 Plan could be funded. This would result in a meaningful payment to creditors while Debtors could maintain their family lifestyle.

As the court computed above, if Debtors had only 50% of the projected disposable income (computed based on reduced Combined Monthly Income Amount stated on Amended Schedule I) to fund the plan with each month, that being "only" $1,185.00 a month, then a 60-month plan would generate $71,100.00 for payment to creditors holding general unsecured claims. After deducting ($5,119) for Chapter 13 Trustee fees and expenses (computed at 7.2%) and an additional ($8,500) for the maximum set fee compensation for Debtors' counsel (assuming that he would charge such amount for a case like this) that would leave $57,481.00 to pay creditors with general unsecured claims that total ($63,351). That would be a 90.73% general unsecured claim dividend - an almost

12

unheard of number in Chapter 13 cases.

However, with Debtors' actual Monthly Net Income of $2,371.00 a month (based on Amended Schedule I, Dckt. 34, and Schedule J, Dckt. 1), Debtors would be done with the Chapter 13 case and paying a 100% dividend to creditors with unsecured claims in less than three years.[2]

Looking at Schedule F, the unsecured debt appears to be substantially consumer credit card debt (as opposed to medical expenses, failed business expenses, and the like). Debtors do list some student loan debt, but those amounts total approximately $1,360.00 and date back to 2002 and 2004.

Debtors do not assert in the Opposition or provide any evidence that their debts are not primarily consumer debts. Opposition, Declaration; Dckts. 27, 28. On the Bankruptcy Petition; Part 6, Question 16; Debtors stated under penalty of perjury that their debts are primarily consumer debts. Dckt. 1 at 6.

For the two Debtors in this Bankruptcy Case, they have sufficient income to clearly provide for their family, with substantial expense cushions, and are able to pay their debts. They are not facing an extraordinary financial burden or had a financially catastrophic event (such as illness) dumped on them. Rather, from the evidence presented (including Debtors' Schedules providing information under penalty of perjury), Debtors are facing the economic and legal reality of persons who have income and borrow money, and then who are then able to pay their debts. These are not debtors for whom Chapter 7 exists, and for these Debtors to use it under the totality of these circumstances, Debtors are abusing the provisions of Chapter 7.

It may be through a Chapter 13 Plan Debtors can discount the repayment of that debt - exchanging three to five years in a Chapter 13 case for such discount. That is some of the extraordinary relief that Congress gives under the Bankruptcy Code. But, given Debtors' projected disposable income, Congress does not give Debtors the right to just take that income and walk away

---

[2] To "show the math" for this calculation, thirty-three monthly payments of $2,371 generates $78,243 in funding for a Chapter 13 Plan. After deducting ($5,634) for Chapter 13 Trustee Fees and Expenses and ($8,500) for the set fees for Debtor's counsel, that leaves $64,109 in funds to pay the ($63,351) in general unsecured claims.

1   from the debt.

2        The court concludes that under the totality of the circumstances, Debtors filing this Chapter 7

3   case is an abuse of Chapter 7 of the Bankruptcy Code. Congress has provided protections to debtors

4   such as these under Chapter 13 of the Bankruptcy Code. While using their income to fully pay the

5   reasonable and necessary expenses for Debtors and Debtors' dependants, it is only the projected

6   disposable income that will be paid into the Plan for payment to creditors.

7        The Motion is granted and Debtors' Chapter 7 is dismissed.

8   **Dated:** January 09, 2024        **By the Court**

**Ronald H. Sargis, Judge**
**United States Bankruptcy Court**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) | Attorney(s) for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>Attn: Trevor Fehr, Esq.<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney(s) for the Trustee** (if any) | |